[Cite as *Arnett v. Precision Strip, Inc.*, 2012-Ohio-2693.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

CALVIN ARNETT,

      PLAINTIFF-APPELLANT,              CASE NO.  2-11-25

      v.

PRECISION STRIP, INC.,             O P I N I O N

      DEFENDANT-APPELLEE.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2011-CV-0173

Judgment Affirmed

Date of Decision:   June 18, 2012

APPEARANCES:

     *C. Bradford Kelley*  for Appellant

     *Juan Jose Perez and Sarah Crabtree Perez* for Appellee

**PRESTON, J.**

{¶1} Plaintiff-appellant, Calvin Arnett (hereinafter "Arnett"), appeals the judgment entry of the Auglaize County Court of Common Pleas dismissing his wrongful termination of employment claim against defendant-appellee, Precision Strip, Inc. (hereinafter "Precision"). We affirm.

{¶2} On June 28, 2011, Arnett filed a complaint alleging that he was a Precision employee from 2006 until 2009. (Doc. No. 1). The complaint further alleged that: on or about March 3, 2009, Arnett was injured while working for Precision; on or about March 17, 2009, Arnett filed a workers' compensation claim, which was approved; and on or about June 29, 2009, Arnett was fired in retaliation for filing his workers' compensation claim. (*Id.*). The complaint alleged that, by firing Arnett in retaliation for his filing a workers' compensation claim, Precision violated R.C. 4123.90 *and* public policy. (*Id.*).

{¶3} On July 27, 2011, Precision filed a Civ.R. 12(B)(6) motion to dismiss the complaint, alleging that Arnett's retaliation claim was time barred under R.C. 4123.90 and Arnett's public policy claim was merely derivative of the time-barred R.C. 4123.90 claim. (Doc. No. 7).

{¶4} On August 8, 2011, Arnett filed a motion to strike paragraph eight of the complaint alleging a violation of R.C. 4123.90. (Doc. No. 11). That same day, Arnett filed a response to the motion to dismiss, arguing that his public policy

claim was timely since it was an intentional tort claim governed by R.C. 2305.09(D)'s four-year statute of limitations. (Doc. No. 12).

{¶5} On August 17, 2011, Precision filed a reply in support of its motion to dismiss, arguing that Arnett's exclusive remedy for his alleged wrongful termination was under R.C. 4123.90, and Arnett failed to file his complaint within 180 days following his termination as required under the statute. (Doc. No. 13).

{¶6} On October 11, 2011, the trial court granted Precision's motion to dismiss, concluding that Arnett's public policy retaliatory termination claim was merely derivative of his untimely R.C. 4123.90 retaliatory termination claim. (Doc. No. 17). The trial court further concluded that R.C. 4123.90 was the exclusive remedy for employees, like Arnett, alleging retaliatory termination after exercising their statutory right to claim workers' compensation benefits, and Arnett's complaint was filed outside R.C. 4123.90's 180-day time limitation. (*Id*.).

{¶7} On November 8, 2011, Arnett filed a notice of appeal. (Doc. No. 20). Arnett now appeals raising one assignment of error for our review.

### ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CASE.**

{¶8} In his sole assignment of error, Arnett argues that the trial court erred in dismissing his complaint since it stated a valid common law claim for wrongful termination of employment in violation of public policy. Arnett also argues that

his claim is not preempted by the Ohio Workers' Compensation System. Finally, Arnett argues that the trial court failed to address *Bickers v. Western & Southern Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, and misapplied *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723.

{¶9} "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992), citing *Assn. for Defense of Washington Local School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989). To sustain a Civ.R. 12(B)(6) dismissal, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *LeRoy v. Allen, Yurasek, & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14, citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 11. Additionally, the complaint's allegations must be construed as true, and any reasonable inferences must be construed in the nonmoving party's favor. *Id.*, citing *Maitland v. Ford Motor Co.*, 103 Ohio St.3d 463, 2004-Ohio-5717, ¶ 11.

{¶10} An appellate court reviews a trial court's decision to grant or deny a Civ.R. 12(B)(6) motion de novo. *RMW Ventures, L.L.C. v. Stover Family Invest., L.L.C.*, 161 Ohio App.3d 819, 2005-Ohio-3226, ¶ 8 (3d Dist.), citing *Hunt v. Marksman Prod.*, 101 Ohio App.3d 760, 762 (9th Dist.1995). Under this standard

of review, an appellate court may substitute, without deference, its judgment for that of the trial court. *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346 (2nd Dist.1992).

{¶11} The Ohio Supreme Court addressed common-law public policy wrongful discharge claims[1] in *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751. In 1994, Shelly Bickers was injured in the course of her employment with Western & Southern Life Insurance Company ("Western & Southern"). *Id.* at ¶ 3. Bickers filed a claim for workers' compensation benefits, and the claim was allowed for multiple conditions. *Id.* Following the injury, and directly related to the allowed conditions in the workers' compensation claim, Bickers experienced periods of inability to work. *Id.* During those periods, Western & Southern did not provide Bickers a position within the restrictions set by her physician. *Id.* In 2002, while Bickers was still receiving workers' compensation benefits, Western & Southern terminated her employment. *Id.*

{¶12} Thereafter, Bickers filed a complaint for wrongful discharge. *Id.* at ¶ 4. In relevant part, Bickers alleged that she had been wrongfully terminated from Western & Southern in violation of the state's public policy as expressed in the

---

[1] Throughout the opinion, we refer to "common-law public policy wrongful discharge claims." We use this term as a short-hand for a specific type of common-law wrongful discharge claims; to wit: a wrongful discharge claim in violation of the public policy underlying R.C. 4123.90, protecting employees from retaliation for pursuing workers' compensation benefits.

workers compensation statutes, citing *Coolidge v. Riverdale Local School Dist.*, 100 Ohio St.3d 141, 2003-Ohio-5357. *Id.*

{¶13} In response, Western & Southern filed a Civ.R. 12(B)(6) motion to dismiss, which the trial court granted; thereafter, Bickers appealed. *Id.* at ¶ 5. The appellate court reversed, concluding that Bickers could bring a *Coolidge*-based claim of wrongful discharge in violation of public policy in a workers' compensation context. *Id.* at ¶ 6, citing *Bickers v. W. & S. Life Ins. Co.*, 1st Dist. No. C–040342, 2006-Ohio-572. The appellate court also concluded that R.C. 4123.90's procedural requirements, including the 180-day time limitation, were not necessary to maintain a *Coolidge*-based public-policy wrongful-discharge claim. *Id.*; *Bickers*, 2006-Ohio-572, at ¶ 16. Western & Southern then appealed to the Ohio Supreme Court, which accepted jurisdiction. *Bickers*, 2007-Ohio-6751, at ¶ 7.

{¶14} The Ohio Supreme Court reversed for two reasons. First, the Court in *Bickers* limited *Coolidge*-based public policy wrongful discharge claims to teachers protected by contracts covered by R.C. 3319.16. *Id.* at ¶ 11, 15. Since Bickers was an at-will employee, not a contracted teacher protected by R.C. 3319.16, she could not bring a *Coolidge*-based public policy wrongful discharge claim. *Id.* at ¶ 11. Second, the Court in *Bickers* concluded that judicially imposing common-law principles of wrongful discharge into the workers'

compensation arena "runs counter to 'the balance of mutual compromise between the interests of the employer and the employee' as expressed by the General Assembly within the Act"; and therefore, "Bickers' remedy must be found within the workers' compensation statutes." *Id.* at ¶ 25. The Court in *Bickers* then held that:

> an employee who is terminated from employment while receiving workers' compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act. *Id.* at ¶ 26, syllabus.

**{¶15}** Four years later, the Ohio Supreme Court created a narrow exception to its elimination of common-law public policy wrongful discharge claims in *Bickers*, recognizing such claims when an injured employee suffered a retaliatory employment action *after* injury *but before* he filed, instituted, or pursued a workers' compensation claim. *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, at paragraph two of the syllabus. Since R.C. 4123.90 does not expressly prohibit retaliation against injured employees who have *not yet* filed, instituted, or pursued a workers' compensation claim, the Court's exception in *Sutton* was designed to fill the "gap [that] exists in the language of the statute for

-7-

conduct that occurs between the time immediately following injury and the time in which a claim is filed, instituted, or pursued." *Id*. at ¶ 14.

{¶16} Arnett admits that *Sutton*'s exception is inapplicable because he was terminated after filing his workers' compensation claim. (Appellant's Brief at 8). Nevertheless, Arnett argues that *Bickers* allows him to file his common-law public policy wrongful discharge claim since *Bickers* only eliminated such claims for employees who were discharged for *non*retaliatory reasons, unlike him. (*Id*. at 7-8). We disagree.

{¶17} The Court in *Bickers* reached both a narrow and a broad holding. Central to both of *Bickers* holdings was the premise that the General Assembly enacted a statutory workers' compensation system, which "supplanted, rather than amended or supplemented, the unsatisfactory common-law remedies." 2007-Ohio-6751, ¶ 18-19, citing *Indus. Comm. v. Kamrath*, 118 Ohio St. 1, 3-4 (1928); *Indus. Comm. v. Weigandt*, 102 Ohio St. 1, 7 (1921). The Court recognized that the General Assembly, as a matter of public policy, decided to proscribe retaliatory discharges alone, so judicially imposing a common-law public policy wrongful discharge claim for nonretaliatory discharges would be inappropriately substituting its policy preference for the General Assembly's enacted policy decision. *Id*. at ¶ 23-25. This conclusion lead to the Court's narrower holding in paragraph 17 of its opinion wherein the Court stated:

> \* \* \* the constitutionally sanctioned, and legislatively created, compromise of employer and employee interests reflected in the workers' compensation system precludes a common-law claim of wrongful discharge in violation of public policy when an employee files a workers' compensation claim and is discharged for *nonretaliatory reasons*. (Emphasis added).

Nevertheless, after reaching this specific conclusion, the Court then stated that:

> the imposition of common-law principles of wrongful discharge into the workers' compensation *arena* runs counter to 'the balance of mutual compromise between the interests of the employer and the employee' as expressed by the General Assembly within the Act. [And therefore,] Bickers' remedy must be found within the workers' compensation statutes. *Id.* at ¶ 25 (emphasis added).

Immediately thereafter, and at the end of the Court's opinion, the Court held:

> an employee who is terminated from employment while receiving workers' compensation has no common-law cause of action for wrongful discharge in violation of the public policy underlying R.C. 4123.90, which provides the exclusive remedy for employees claiming termination in violation of rights conferred by the Workers' Compensation Act. *Id.* at ¶ 26.

This subsequent holding, which the Court adopted as its syllabus, is not limited to nonretaliatory discharges alone.

**{¶18}** While the Ohio Supreme Court, in dicta, has more recently questioned the expansive syllabus in *Bickers*, the Court has not modified or overruled it. *Sutton*, 2011-Ohio-2723, at ¶ 19-21, 23. The Ohio Supreme Court made *Bickers'* syllabus the broader of its two holdings, and, to the extent that there is disharmony between the syllabus and an opinion's text or footnotes, the syllabus controls. S.Ct.R.Rep.Op. 1(B)(1)(2). Prior to the Ohio Supreme Court's release of *Sutton*, the Court of Appeals in several districts had interpreted *Bickers'* syllabus to eliminate common-law public policy wrongful discharge claims. *Mortensen v. Intercontinental Chem. Corp.*, 178 Ohio App.3d 393, 2008-Ohio-4723, ¶ 15 (1st Dist.); *Cunningham v. Steubenville Orthopedics & Sports Medicine, Inc.*, 175 Ohio App.3d 627, 2008-Ohio-1172, ¶ 53-54 (7th Dist.); *Scalia v. Aldi, Inc.*, 9th Dist. No. 25436, 2011-Ohio-6596, ¶ 10; *Sidenstricker v. Miller Pavement Maintenance, Inc.*, 10th Dist. No. 09AP-523, 2009-Ohio-6574, ¶ 10-13; *McDannald v. Fry & Assoc., Inc.*, 12th Dist. No. CA2007-08-027, 2008-Ohio-4169, ¶ 31-32. A multitude of federal district courts in the sixth circuit have reached this same conclusion. *McDonald v. Mt. Perry Foods, Inc.*, No.: C2:09–CV–0779 (S.D.Ohio 2011), citing *Sharp v. Honda of Am. Mfg.*, No.: 2: 10–CV-1039 (S.D.Ohio 2011), *Amara v. ATK, Inc.*, No.: 3:08–CV–0378 (S.D.Ohio 2009),

*Helmick v. Solid Waste Auth. of Cent. Ohio*, No.: 2:07–CV–912 (S.D.Ohio 2009), *Trout v. FirstEnergy Generation Corp.*, No.: 3:07–CV–00673 (N.D.Ohio 2008), *Compton v. Swan Super Cleaners, Inc.*, No.: 08–CV–002 (S.D.Ohio Apr. 29, 2008), *McDermott v. Cont'l Airlines, Inc.*, No.: 2:06–CV–0785 (S.D.Ohio 2008); *Keyes v. Car-X Auto Service*, No.: C-1-07-503 (S.D.Ohio 2009); *Powell v. Honda of America Mfg., Inc.*, No. 2:06-CV-979 (S.D.Ohio 2008).

**{¶19}** The Court of Appeals for the Twelfth District continues to interpret *Bickers*' syllabus to eliminate common-law public policy wrongful discharge claims. *Rose v. CTL Aerospace, Inc.*, 12th Dist. No. CA2011-09-171, 2012-Ohio-1596, ¶ 12-13. Similar to Arnett herein, the plaintiff in *CTL* argued that *Bickers*' syllabus was limited to *nonretaliatory* discharges, citing language from *Bickers* and *Sutton*. 2012-Ohio-1596, at ¶ 12. The Twelfth District disagreed, however, noting that "the bulk of the [*Bickers*] opinion indicates the court's belief that the statute precludes *all* common law claims for wrongful discharge." *Id*. at ¶ 13 (emphasis in original). The Twelfth District further concluded that "*Sutton* creates a very limited exception to the at-will employment doctrine for injured employees who suffer retaliation prior to instituting or pursuing a workers' compensation claim." *Id*. at ¶ 16. We agree with the Twelfth District's interpretation of *Bickers* and *Sutton* and are not persuaded that mere dicta in *Sutton* overruled or otherwise modified *Bickers*' syllabus.

-11-

{¶20} Allowing employees to file common-law public policy wrongful termination claims would require this Court to invade the General Assembly's law-making authority and would completely eviscerate the procedural requirements enacted in R.C. 4123.90. *Bickers*, 2007-Ohio-6715, at ¶ 24. *See also Sutton*, 2011-Ohio-2723, at ¶ 39-56 (O'Donnell, J., Cupp, J., and Lanzinger, J., dissenting). Since the General Assembly specifically enacted a statutory cause of action for employees, like Arnett, alleging a termination of employment in retaliation for pursuing workers' compensation benefits, the General Assembly has supplanted the common-law on that issue. *Bickers*, 2007-Ohio-6751, at ¶ 18-19, citing *Kamrath*, 118 Ohio St. 1, 3-4; *Weigandt*, 102 Ohio St. 1, 7. Thus, Arnett's remedy is limited to that provided in R.C. 4123.90, and the trial court did not err by dismissing the remaining claim in Arnett's complaint which alleged a common-law public policy wrongful discharge. *Bickers*, 2007-Ohio-6751, at ¶ 25.

{¶21} Arnett's assignment of error is, therefore, overruled.

{¶22} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

***Judgment Affirmed***

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**